UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

DANIEL HAWKINS and DD RESTAURANT GROUP,
INC,                                          **ORDER**

                *Plaintiff*s,          23-CV-4040(KAM)(JWM)

    -against-

CHIP H. ZOEGALL, CENTRICFM SOLUTIONS,
INC., PACIFICA CMFM GROUP, LLC and
RIHAM M. FARID a/k/a REI FARID,

                *Defendants*.

---------------------------------------X

      On May 31, 2023, Plaintiffs Daniel Hawkins and DD Restaurant
Group, Inc. filed a verified complaint against Defendants Chip H.
Zoegall, Centricfm Solutions, Inc. ("Centricfm"), Pacifica Cmfm
Group, LLC ("Pacifica"), and Riham M. Farid a/k/a Rei Farid,
Zoegall's wife.   (ECF No. 1).  Plaintiffs allege that Defendants
created Pacifica, a new limited liability corporation owned by
Farid, and transferred Centricfm's assets to Pacifica and to
Zoegall and Farid's individual accounts and other businesses, and
for their personal benefit, after litigation was commenced against
Zoegall and Centricfm in order to evade and frustrate the
enforcement of a December 13, 2022 judgment entered in favor of
Plaintiffs and against Centricfm, in the amount of $1,287,602.60,
in the United States District Court for the Northern District of
California ("California Judgment").  (ECF No. 1).  The Complaint

1

seeks recovery of voidable transfers as to Defendants' assets and present and future creditors, pursuant to 12 New York Debtor and Creditors Law § 273 and § 274, and recovery of reasonable attorneys' fees, pursuant to 12 New York Debtor and Creditors Law §§ 273, 274, and 276-a. (*Id.* at ¶¶ 48-59.) The Complaint also seeks an order piercing the corporate veil against Zoegall (the sole owner, the sole shareholder, and Chief Executive Officer of Centricfm), and successor liability against Pacifica. (*Id.* at ¶¶ 60-66.) Finally, the Complaint asserts that Zoegall is liable under New York Business Corporations Law § 719 for any corporate dividends distributed or transferred to him from Centricfm. (*Id.* at ¶¶ 67-70.) The claims asserted in the Complaint total the amount of the California Judgment, $1,287,602.60, plus interest and attorneys' fees.

On June 2, 2023, Plaintiffs moved for an order of attachment pursuant to 12 N.Y. CPLR § 6201(3) and Federal Rule of Civil Procedure 64 on the grounds that Defendants assigned, disposed of, encumbered, or secreted property, or removed it from the state, and did so with intent to defraud Plaintiffs as creditors of Centricfm or to frustrate the enforcement of the California Judgment entered in favor of Plaintiffs and against Centricfm in the amount of $1,287,602.60. Plaintiffs moved in the alternative for an *ex parte* Temporary Restraining Order ("TRO"), pursuant to Federal Rule of Civil Procedure 65 and N.Y. CPLR § 6201(3). In

2

support of the motion, Plaintiffs submitted the Declaration of Plaintiff Daniel Hawkins, dated May 31, 2023, and attached exhibits; the Declaration of Plaintiff's Counsel, Stephen Z. Starr, Esq., dated May 31, 2023, and attached exhibits; and an Attorney Certification pursuant to Fed. R. Civ. P. 65(b)(1)(B) as to why notice need not be given to Defendants prior to seeking an order of attachment or TRO. (ECF Nos. 6-10.)

On June 5, 2023 at 12:15 PM, the Court, having found that sufficient reason was shown by Plaintiffs pending a hearing on Plaintiffs' motion, entered a TRO restraining Defendants and their officers, directors, employees, agents, attorneys, subsidiaries, distributors, and all persons and entities in active concert or participation with Defendants from transferring, encumbering, selling, converting, concealing, dissipating, disbursing, assigning, spending, withdrawing, gifting or otherwise disposing of any of Defendants' assets, up to a value of $1,287,602.60, pecuniary or otherwise, whether in Defendants' actual or constructive possession, or held by any banking, savings, loans, investments or other financial institution or corporation, except as such is required in the ordinary course of business in an amount not to exceed $3000, unless authorized by the Court. (ECF No. 11; 06/05/2023 Amended Order.) The Court also ordered Defendants to show cause before the Court as to why Plaintiffs' motion for an order of attachment should not be granted. (*Id.*)

On June 8, 2023, Defendants filed a memorandum in opposition to Plaintiffs' motion and supporting affidavits by Defendants Zoegall and Farid. (ECF Nos. 14-16.)  On June 9, 2023, Plaintiffs filed a reply.  On June 13, 2023, the Court held a show cause hearing at which Plaintiffs and Defendants had an opportunity to be heard, although neither party submitted additional exhibits or provided oral testimony at the hearing.  The Court extended the TRO until June 20, 2023, upon consent, and granted Defendants an opportunity for supplemental filings to provide additional evidence prior to a second hearing on June 20, 2023.[1]  (Minute Entry 06/13/2023.)  On June 14, 2023, Defendants filed an affidavit by Farid regarding Pacifica's employees and payroll.  (ECF No. 21.)  On June 15, 2023, Defendants filed a letter previewing expected arguments and testimony for the June 20, 2023 hearing, and affidavits by Farid and Zoegall concerning the location on their assets.  (ECF Nos. 23-25.)  On June 16, 2023, Plaintiffs filed a response and affidavits by Plaintiff Hawkins and Plaintiff's counsel, Stephen Z. Starr, Esq.  (ECF Nos. 26-28.)

On June 20, 2023, corporate defendants Centricfm and Pacifica filed for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101- 1532, in the United States

---

[1] Although Zoegall and Farid were expected to testify during the hearing on June 20, 2023, the individual defendants did not appear.  (Minute Entry 06/20/2023.) No additional evidence was presented regarding the order of attachment, as the parties primarily discussed the bankruptcy petitions of corporate defendants Centricfm and Pacifica, filed on June 20, 2023.  (*See id.;* ECF No. 31.)

Bankruptcy Court for the Eastern District of New York. (ECF No. 31.) The filings activated the automatic stay under 11 U.S.C. § 362(a) as to the corporate debtor-defendants Centricfm and Pacifica. *See* 11 U.S.C. § 362(a) ("[A chapter 11 bankruptcy] petition . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."). Accordingly, until the automatic stay is lifted, any further relief sought by Plaintiffs affecting the assets of Centricfm and Pacifica must be sought in bankruptcy court, e.g. pursuant to 11 U.S.C. § 548, until the conclusion of the bankruptcy proceedings. Defendants Centricfm and Pacifica are ordered to inform the Court when the bankruptcy proceedings have concluded.

The automatic stay, however, applies only to Centricfm and Pacifica, and does not limit the Court's jurisdiction over individual defendants Zoegall and Farid. Accordingly, the Court issues this Memorandum and Order addressing Plaintiffs' motion for an order of attachment as to defendants Zoegall and Farid.

In consideration of the parties' filed submissions and counsels' representations at the two show cause hearings, the Court

reviews the applicable legal standards and makes the following findings of fact and conclusions of law.

**I.   Legal Standard**

Attachment is a provisional prejudgment remedy available in federal court "under the circumstances and in the manner provided by the law of the state in which the district court is held." *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 218–19 (2d Cir. 2006) (internal quotation marks and citations omitted). To obtain an order of attachment under New York law, Plaintiffs must satisfy a four-factor test: "(1) [Plaintiffs have] a cause of action for a money judgment, (2) there is a probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under [12 N.Y.] CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all counterclaims known to the party seeking attachment." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 269 (E.D.N.Y. 2011) (internal quotation marks and citations omitted). For the reasons explained below, Plaintiffs have satisfied all four factors to warrant an order of attachment against Zoegall and Farid.

**II. Discussion**

Plaintiffs have established – and Defendants do not dispute – the first and fourth factors required for an order of attachment. As for the first factor, Plaintiffs' verified complaint states a claim for a money judgment, as Plaintiffs seek a judgment in an

6

amount of at least $1,287,602.60, plus interest and attorneys'
fees. (ECF No. 1.)  As for the fourth factor, Defendants have not
presented any counterclaims nor informed the Court as to any
anticipated counterclaims. (*See* ECF No. 14.)  Indeed, Defendants'
written submissions challenge only the third factor for an order
of attachment, which requires the Court to find that one or more
of the enumerated statutory grounds for attachment under § 6201
exists. (*See id.* at 3-5); *Allstate*, 771 F. Supp. 2d at 269.

### A.  Enumerated Statutory Grounds

In Plaintiffs' motion, Plaintiffs assert that the statutory
ground applicable in the instant case is N.Y. CPLR § 6201(3), which
provides that an order of attachment may be granted as follows:

> [where] the defendant, with intent to defraud his
> creditors or frustrate the enforcement of a judgment
> that might be rendered in plaintiff's favor, has
> assigned, disposed of, encumbered or secreted property,
> or removed it from the state or is about to do any of
> these acts.

N.Y. CPLR § 6201(3).  Plaintiffs argue that Defendants had the
intent to defraud Plaintiffs – or, at the least, the intent to
frustrate the California Judgment - when Defendants transferred
funds from Centricfm to Pacifica and to the personal and other
business accounts of the individual defendants. (ECF No. 10 at ¶¶
26-27.)  In addition, Plaintiffs assert that N.Y. DCL § 276(a)(2)
explicitly provides that an order of attachment is an appropriate
remedy for creditors, both against any assets that have been

transferred and against the other property of a *transferee*, including, in the instant action, transferees Zoegall and Farid. (ECF No. 10 at ¶ 27); *see* N.Y. DCL § 276(a)(2) ("In an action for relief against a transfer or obligation under this article, a creditor . . . may obtain . . . an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law.")

Defendants counter that Plaintiffs have not satisfied the statutory ground requirement under § 6201(3). Defendants assert that Plaintiffs' exhibits failed to establish that (1) Farid "assigned, disposed of, encumbered or secreted" any property or removed any property from New York; or (2) that Defendants carried out any of the asset transfers "with the intent to defraud." (ECF No. 14 at 4.) Additionally, Defendants assert that § 276(a)(2) does not apply to the instant case — meaning that an order of attachment would *not* be an appropriate remedy against the transferred assets or other property of transferees Farid and Zoegall. (*Id.*) Defendants contend that § 6201(3) has not been met and thus Plaintiffs have not established that attachment is "available under applicable law," as required by § 276(a)(2). (*Id.*); N.Y. DCL § 276(a)(2).

This Court respectfully disagrees with Defendants on both arguments.

## i. Defendant Farid

The Court finds that Farid is subject to an order of attachment under § 6201(3). Although Defendants claim that Farid was not involved in the transfer of Centricfm's assets in any way, Plaintiffs submitted exhibits establishing that Pacifica uses the same business location, employees, phone number, website information, and IP address as Centricfm, and that Zoegall transferred $417,000 to Pacifica on December 28, 2021, after the initiation of Plaintiff's lawsuit in the Northern District of California. (ECF Nos. 7, 7-2—7-6.)  Plaintiffs also demonstrated that six of Pacifica's nine employees are former Centricfm employees, and that Pacifica pays Zoegall but not Farid, the purported owner and sole member of Pacifica. (ECF No. 26 at ¶ 6; ECF No. 27 at ¶¶ 4-6; ECF No. 27-1 at 1-9.)  Additionally, Farid's affidavit attests that she is the sole member of Pacifica, although Zoegall previously testified that Farid was a homemaker. (ECF No. 15 at ¶ 1; ECF No. 19 at 3; ECF No. 7-1 at 8.)  Farid also owns Yoga Sweet Yoga, Inc., which was transferred at least $61,539 from Centricfm. (ECF No. 10 at 6.)  Based on the pattern of asset transfers from Centricfm to Zoegall and Farid's personal accounts, the fact that Zoegall and Farid are married, that Farid previously was uninvolved in any business management related to Centricfm, and that Farid knew or should have known that litigation against Centricfm was ongoing at the time of many of these transfers, the Court declines to find at this time that Farid was a merely

9

passive, unknowing, and uninvolved recipient of Centricfm's funds. Accordingly, Plaintiffs have sufficiently established that Farid, with the intent to defraud or frustrate a judgment, was involved in the transfer of assets from Centricfm.  N.Y. CPLR § 6201(3).

Even if Farid *was* merely a recipient of Centricfm's funds, as Defendants contend, this Court finds that an order of attachment should still issue against her.  Plaintiffs bring a claim under N.Y. DCL § 276(a)(2), which provides that in "an action for relief against a transfer," a creditor may obtain "an attachment or other provisional remedy *against the asset transferred or other property of the transferee* if available under applicable law."  Here, Farid and Zoegall are undisputed transferees of Centricfm's assets and applicable law provides for attachment against the transferred assets and other property of the transferees.  Thus, Farid may be subject to an order of attachment if the Court finds that the § 6201 statutory factors applies to the transferor, Zoegall.[2]

Defendants strongly dispute that § 276 allows Plaintiffs to obtain an attachment against Farid.  Defendants argue that the order of attachment is not "available under applicable law" against Farid because Plaintiffs have established no indicia of fraud under § 6201(3) specifically pertaining to Farid.  In other words,

---

[2] Zoegall is both a transferor, because he transferred funds from Centricfm and was the sole shareholder and owner of Centricfm, and a transferee, because he was a recipient of the transferred funds through his personal accounts and for his living expenses.

Defendants argue that the requirements of § 6201(3) must be satisfied as to asset *transferees* for an attachment to be "available under applicable law" under § 276(a)(2). The Court agrees with Defendants' representation at the June 13, 2023 show cause hearing that limited case law exists regarding the "available under applicable law" portion of § 276(a)(2).

Nevertheless, the Court respectfully declines to adopt Defendants' legally untenable interpretation of § 276(a)(2) because it would render the statute superfluous. Under Defendants' interpretation, Plaintiffs would have to establish that transferees *themselves* satisfied all elements of § 6201 in order to have an order of attachment be "available under applicable law" under § 276(a)(2). Thus, under Defendants' construction, a defendant could transfer assets to numerous individuals and entities to frustrate the enforcement of a judgment, or to defraud creditors, without recourse against the transferred assets or other assets of the transferees, if the transferees were not engaged in fraudulent behavior. This interpretation is illogical considering the statutory language of § 6201, which specifically targets the actions of defendants, not transferees. *See* 12 N.Y. CPLR § 6201(3) ("[A]n order of attachment may be granted in any action . . . when *the defendant*, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of,

11

encumbered or secreted property, or removed it from the state."
(emphasis added)).

If Defendants argue that their interpretation applies to
transferees who are also defendants, such as Farid, an absurd
situation arises.  In such a hypothetical situation, Plaintiffs
could receive an order of attachment against a *non-party transferee*
under § 276 if Plaintiffs establish that Zoegall transferred
property with the "intent to defraud" pursuant to § 6201(3).  But
Plaintiffs would be unable to receive an order of attachment
against defendant-transferee Farid — even if Plaintiffs establish
that Zoegall transferred property with the "intent to defraud" —
if Plaintiffs did not establish "intent to defraud" by Farid as
well.  Because such an interpretation would frustrate the plain
language of § 276(a)(2) — allowing "an attachment or other
provisional remedy against the asset transferred or other property
of the transferee" — the Court finds that Farid is subject to an
order of attachment in her role as asset transferee.  *See also JSC
VTB Bank v. Mavlyanov*, No. 652516/2016, 2017 WL 2494806, at *11
(N.Y. Sup. Ct. June 09, 2017) (stating, in the context of
attachment under § 6201, that a "creditor may attach property or
funds fraudulently conveyed to a business entity or a friend or
relative of the debtor in order to shield that asset from the
creditor.  A fraudulent conveyance may consist of the payment of

money or the placing of assets in another's name."). Any other
construction would render the remedy meaningless.

### ii. Indicia of Fraud

The Court also finds that Plaintiffs have satisfied their
burden to show that Defendants Zoegall - at the least – transferred
Centricfm's assets either or both "with intent to defraud"
creditors or to "frustrate the enforcement of a judgment that might
be rendered in [Plaintiffs'] favor." N.Y. CPLR § 6201(3). The
Second Circuit has instructed district courts to consider "badges
of fraud" when determining whether a party's evidence supports a
finding of fraudulent intent, because direct proof of fraudulent
intent is rare. *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983).
These "badges" include:

> (1) the lack or inadequacy of consideration; (2) the
> family, friendship or close associate relationship
> between the parties; (3) the retention of possession,
> benefit or use of the property in question; (4) the
> financial condition of the party sought to be charged
> both before and after the transaction in question; (5)
> the existence or cumulative effect of a pattern or series
> of transactions or course of conduct after the incurring
> of debt, onset of financial difficulties, or pendency or
> threat of suits by creditors; and (6) the general
> chronology of the events and transactions under inquiry.

*Id.* at 1582-83. Again, the record reflects badges of fraud by the
individual defendants, Farid and Zoegall.

Here, Plaintiffs provided sufficient evidence establishing
that Pacifica (purportedly owned by Farid) was formed 12 days after
Plaintiffs filed the action against Centricfm (owned by Zoegall,

Farid's husband) in the Northern District of California; a $417,000 check signed by Zoegall was paid to Pacifica from Centricfm on December 28, 2019, almost two months after the initiation of the California lawsuit; hundreds of thousands of dollars were transferred away from Centricfm – to parties closely associated with Zoegall - during the period in which the California action was ongoing, from 2019 to 2022; and Plaintiffs have been unable to enforce the California Judgment issued on December 13, 2022. (*See* ECF No. 7 at ¶¶ 38-49; ECF No. 10 at 5-7); *see Halse v. Hussain*, 147 N.Y.S.3d 148, 151-52 (N.Y. Sup. Ct. 2021) (noting that where defendants transferred substantial assets "when they knew or should have known that litigation . . . was looming, [it] readily permitted the inference that their actions were intended to frustrate enforcement of a potential money judgment against them").

Additionally, there is no indication that the individual defendants paid any consideration for any of the transfers. *Yong Xiong He v. China New Star Rest., Inc.*, No. 19-CV-5907(PKC)(CLP), 2020 WL 6202423, at *6 (E.D.N.Y. Oct. 22, 2020) (finding badges of fraud were met where, *inter alia*, "properties were transferred for virtually no consideration"). Defendants also have offered no explanation for why hundreds of thousands of dollars were transferred from Centricfm and have been retained by a wide variety of entities closely associated with Zoegall, including Zoegall's

14

personal accounts, Zoegall and Farid's mortgage, Farid's yoga studio, a private school that Zoegall's and Farid's children attend, and other personal expenses and accounts. *See Mineola Ford Sales Ltd. v. Rapp*, 661 N.Y.S.2d 281, 282 (N.Y. Sup. Ct. 1997) (finding evidentiary showing for order of attachment where "defendant offered no explanation as to what had happened to hundreds of thousands of dollars . . . while the funds were under [defendant's] control"). Defendants do not dispute that Centricfm is now insolvent and unable to satisfy the California Judgment — nor could they, as Centricfm has since filed for bankruptcy. (ECF No. 1 at ¶ 33; ECF No. 31.) Instead, Zoegall and Farid attest in their affidavits that they, too, lack the ability to satisfy a judgment. (ECF Nos. 15, 16, 24, 25.) Moreover, although Defendants contend that the ongoing transfer of Centricfm's assets over the years was reasonable, the cumulative effect of the transfers after Plaintiffs' threatened and actual lawsuits and the chronology of the transactions establish the fifth and sixth "badges of fraud." Despite Centricfm's apparent impending insolvency, Zoegall transferred assets from Centricfm to his personal accounts and to his retail investment accounts at Fund that Flip throughout 2022, including *after* summary judgment in the amount of $850,000 was awarded to Plaintiffs in the California action in June 2022. (ECF No. 1 at ¶¶ 15-17; ECF No. 10 at ¶ 13); *accord Korea Deposit Ins. Corp. v. Jung,* 68 N.Y.S.3d 625, 632 (N.Y.

15

Sup. Ct. 2017) (stating that the fact that a defendant "knew of his debt to plaintiff, yet [had] not found the resources to pay the debt, and therefore knew that any transfer without consideration would be to plaintiff's detriment[,] raise[d] an inference of his fraudulent intent").

Therefore, the Court finds that Plaintiffs' evidence satisfies the "intent to defraud" requirement of § 6201(3) as to both Zoegall and Farid. *Accord Allstate Ins. Co. v. Levy*, 478 F. App'x 688, 691 (2d Cir. 2012) (summary order) ("[I]t is well-established under New York law that in determining whether a defendant has disposed of property with intent to defraud its creditors for the purpose of applying § 6201(3), courts may consider evidence of the defendant's fraudulent conduct predating the initiation of suit by the plaintiff."). Accordingly, Plaintiffs have met the third factor of the test for an order of attachment under New York law, requiring Plaintiffs to satisfy a statutory ground for attachment under CPLR § 6201, by satisfying the requirements of § 6201(3).

### B. Probability of Success on the Merits

Defendants also challenge whether Plaintiffs have established a probability of success on the merits of their claims – the second factor required to obtain an order of attachment under New York law. (ECF No. 23 at 2-3.); *see Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 221 (2d Cir. 2006) (noting that "existence

16

of a statutory ground under Section 6201 is not sufficient [for an order of attachment] absent satisfaction of the other requirements"). Probability of success "requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case" but "all legitimate inferences should be drawn in favor of the party seeking attachment." *In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 306 (S.D.N.Y. 2010).

Plaintiffs have established a probability of success. Plaintiffs' first three causes of action assert recovery of voidable transfers and attorneys' fees under New York Debtors and Creditors Law §§ 273, 274, and 276-a. Section 273 provides that a transfer of a debtor is voidable to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor." N.Y. DCL § 273(a)(1). The statute specifically provides that "actual intent" may be shown by considering whether, *inter alia*, "the transfer or obligation was to an insider," "the debtor retained possession or control of the property transferred after the transfer;" "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;" and "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." N.Y. DCL § 273(b). All the foregoing factors weigh in favor of a finding of

17

actual intent and are grounds to find probability of Plaintiffs'
success on the merits.

Plaintiffs have provided sufficient evidence to establish
that it is more likely than not that Defendants' transfers were
made with "with actual intent to hinder, delay, or defraud any
creditor," including a showing that Pacifica (an LLC owned by
Farid, the wife of Centricfm's sole shareholder, owner, and CEO)
was formed shortly after a lawsuit was filed by Plaintiffs against
Centricfm; that hundreds of thousands of dollars were transferred
from Centricfm by its sole shareholder and CEO Zoegall – to
"insiders," or parties closely associated with Zoegall - during
the period in which the California action was ongoing, from 2019
to 2022; and that Plaintiffs have been unable to enforce the
California Judgment issued on December 13, 2022 due to Centricfm's
subsequent insolvency. (*See* ECF No. 7 at ¶¶ 38-49; ECF No. 10 at
5-7.)   Additionally, under § 274, transfers made without
consideration are considered voidable as to creditors "whose claim
arose before the transfer was made or the obligation was incurred
if the debtor made the transfer or incurred the obligation without
receiving a reasonably equivalent value in exchange for the
transfer or obligation and the debtor was insolvent at that time
or the debtor became insolvent as a result of the transfer or
obligation."   N.Y. DCL § 274(a). Given Centricfm's insolvency,
Zoegall's transfers — made without consideration — are likely to

be considered fraudulent because Zoegall continued to transfer money out of Centricfm even after summary judgment in the amount of $850,000 was awarded to Plaintiffs in June 2022. (ECF No. 1 at ¶¶ 16-17; ECF No. 10 at 6.)  Finally, in such cases where actual intent is found, § 276-a provides for attorneys' fees for creditors.  Accordingly, Plaintiffs have established a probability of success on their first three causes of action.

Plaintiffs' remaining causes of action involve piercing the corporate veil.[3]  (ECF No. 1 at ¶¶ 60-66.)  *But see Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (2018) ("Properly understood, an attempt to pierce the corporate veil does not constitute a cause of action . . . rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." (alterations, internal quotation marks, and citation omitted)).

To pierce the corporate veil under New York law, a plaintiff generally "must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Conason v. Megan Holding, LLC*, 25 NY.3d 1, 18 (2015)

---

[3] Plaintiffs' complaint also requested that Pacifica be subject to successor liability as to Centricfm's obligations.  (ECF No. 1 at ¶¶ 60-66.)  Given the automatic stay issued due to Centricfm's bankruptcy action, however, the Court makes no finding concerning Pacifica's alleged successor liability.

(internal quotation marks omitted).  A plaintiff must allege that a defendant "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice." *Bonderman*, 31 N.Y.3d at 47-48.

Here, Zoegall has sworn in his affidavit that he is the sole owner and shareholder of Centricfm and does not contradict Plaintiffs' allegations that he is the CEO of the company as well. (ECF No. 15.)  As discussed at length above, this Court has found that it is more likely than not that Plaintiffs have suffered an injury due to Zoegall's actions as sole shareholder and CEO of Centricfm, in which Zoegall transferred Centrifcm's assets to individuals and entities that appeared unrelated to Centricfm's business and adversely affected Plaintiffs' interest in enforcing the California Judgment.  Plaintiffs' evidentiary submissions have established that Zoegall "abused the privilege of doing business in the corporate form" by repeatedly mingling corporate and personal assets — by using corporate assets to pay for tuition or charitable gifts, a homeowners association, boat marinas, clothing, party supplies, the mortgage on Defendants' home, dentists, and more — and by repeatedly transferring assets from Centricfm's accounts despite knowledge of an $850,000 judgment against the corporation.  (*See* ECF No. 10 at ¶ 18.)  Defendants have made no showing that corporate formalities were observed to authorize any of these transfers for legitimate business purposes.

Accordingly, the Court finds a probability of success on Plaintiffs' request to pierce the corporate veil.

Therefore, the Court finds that Plaintiffs have established all four factors required for an order of attachment. *See Allstate Ins.*, 771 F. Supp. 2d at 269 ("(1) [Plaintiffs have] a cause of action for a money judgment, (2) there is a probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under [12 N.Y.] CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all counterclaims known to the party seeking attachment.").

Accordingly, for the reasons stated above, the Court grants Plaintiffs' motion for an order of attachment as to Zoegall and Farid. Because of the automatic stay arising from the bankruptcy proceedings filed by Centricfm and Pacifica, the Court has not made findings and will not order attachment at this time as to the corporate entities. The order of attachment is forthcoming, after review by the parties, and will detail Zoegall and Farid's personal accounts, real property, and assets subject to the order.

**SO ORDERED**
Dated:    June 20, 2023
          Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

21